# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CRIMINAL DOCKET NO. 5:07CR24-V

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) **ORDER**<br>WAI LUN NG, )<br>)<br>Defendant. )<br>_____ ) | |

**THIS MATTER** is before the Court on the Government's Motion to Quash Subpoenas that were issued on September 18, 2007 (Document #14), filed on October 4, 2007, and Defendant's Response in Opposition to that Motion (Document #15). This matter is now ripe for disposition by the Court.

Having carefully considered the relevant facts, arguments, and applicable authority, this Court will <u>grant</u> the Government's Motion to Quash the Subpoenas.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was stopped on May 9, 2007 for a traffic violation on Interstate 77, near Statesville, North Carolina. During the stop, and pursuant to the alert of a narcotics-detection canine ("K9 Kas"), officers searched the Defendant's vehicle and seized almost two-hundred pounds of marijuana. Defendant was then arrested, and he was indicted by a grand jury on May 23, 2007.

On August 10, 2007, the Defendant filed a Motion to Suppress Evidence (Document #10) seized during the traffic stop that led to his arrest, and on August 28,

1

2007, the Government filed its Response (Document #11). This Court scheduled a hearing on the matter for October 9, 2007.

On or about September 18, 2007, at the request of the Defendant, the Clerk of the Court issued three subpoenas duces tecum in relation to the hearing scheduled for October 9, 2007.[1] On October 4, 2007, the Government filed a Motion to Quash two of the three subpoenas issued (Document #14), and the Defendant filed his response (Document #15).[2]

This Court commenced the suppression hearing on October 9, 2007, without having ruled on the Motion to Quash.[3] Prior to the hearing, the Government proffered documents it believed to be responsive to the subpoenas[4], and this Court accepted

---

[1] It should be noted that the subpoenas are facially flawed. Although the name of the Clerk of the Court, Frank G. Johns, is printed on each subpoena, the signature on each subpoena is of Maxine G. Yelton. Mrs. Yelton, a former Deputy Clerk, no longer works for the Court.

[2] The Government did not include the subpoena to Capt. Mark McCollum in its Motion to Quash. This Court will construe that Motion as applying to all three subpoenas since the documents requested from Capt. McCollum, an officer not present at the traffic stop, are identical to those requested from Sgt. J.C. Elliot.

[3] This Court decided that, for the purposes of judicial economy, it would hold the suppression hearing before determining the materiality of the requested documents. See United States v. Gonzalez-Acosta, 989 F.2d 384, 388 (10th Cir. 1993) (affirming the district court's decision to proceed with the suppression hearing before determining whether the requested documents were necessary); United States v. Ollison, 1995 U.S. Dist. Lexis 207, 23 (N.D. Ill. 1995) (approving of the procedure of using the suppression hearing to determine the materiality of the documents subpoenaed); United States v. Cherry, 1991 U.S. App. Lexis 18192, 13 (4th Cir. 1991) (affirming a district court's in camera review and determination of relevancy of documents requested pursuant to Rule 17(c)).

[4] The Government stated that it did not have any documents responsive to the request for "any drafts, plans, outlines, policies, manuals, programs, directives, and any other documentation related to any drug and/or weapons and/or currency interdiction checkpoint or similar law enforcement plan along the I-77 corridor in Iredell County by the Iredell County Sheriff's Department." Defense Counsel accepted this as a response to his subpoena.

those documents for review.  This Court then reviewed the documents in camera and, in light of the arguments advanced by the Defendant, determined that the documents were not material to the suppression issue, and thus did not alter its decision on the matter.  That issue now decided, this Court will now grant the Motion to Quash and find that the Government will not be obligated to produce the requested documents unless they are required to do so under the standard discovery rules.[5]

## II. ANALYSIS

The Federal Rules of Criminal Procedure provide a means for a defendant to issue subpoenas duces tecum for documents relating to his criminal prosecution.  Fed. R. Crim. P. 17(c).  However, Rule 17(c) is not intended to provide an additional means of pretrial discovery.  Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951).  As the Supreme Court explained, in order for the subpoenas to be properly issued under Rule 17(c), the moving party must demonstrate that the requested documents are 1) relevant, 2) admissible, and 3) specific to the hearing about to occur.  United States v. Nixon, 418 U.S. 683, 700 (1974).

The Defendant identifies three general types of documents in the subpoenas: a) documents relating to the K9 training of the dog's handler, Sgt. G.P. Simpson, b) documents relating to the training of the narcotics-detection dog, K9 Kas, and c) "any ... plans, ... policies, ... programs, ... and any other documentation related to any drug and/or weapons and/or currency interdiction checkpoint or any similar law enforcement

---

[5] Such discovery is controlled by Federal Rules of Criminal Procedure 16 and 26.2; the Jencks Act, 18 U.S.C. § 3500; Brady v. Maryland, 373 U.S. 83 (1963); and Giglio v. United States, 405 U.S. 150 (1972).

plan."[6] (Document 14-1 and 2). The first two requests will be considered together since they are not independently relevant.[7]

As a preliminary matter, this Court first finds that the Government has standing to challenge these subpoenas, which were issued to third parties. See United States v. Beckford, 964 F. Supp. 1010, n.12 (E.D. Va. 1997); United States v. Clark, 2001 U.S. Dist. Lexis 9650, 4 (W.D. Va. 2001) (noting that "courts have routinely granted the government's motion to quash a subpoena duces tecum where a defendant requests records from a third party").

Regarding the training records of Sgt. Simpson and K9 Kas, this Court will grant the motion to quash this part of the subpoenas as irrelevant, inadmissible, and non-specific. The evidence is irrelevant because it regards the general history of education of the canine rather than facts specific to the search in question. See United States v. Gonzalex-Acosta, 989 F.2d 384, 389 (10th Cir. 1993) (finding a request for training documents of a police canine irrelevant because the dog was certified on the day in question). The Fourth Circuit has held that a dog sniff generally establishes probable cause for a search so long as the government offers evidence that the dog is reliable. United States v. Koon Chung Woo, 2007 U.S. App. Lexis 2402, 13-16 (4th Cir.), cert. denied, 2007 U.S. Lexis 6940 (2007) (finding an affidavit of a dog's training and

---

[6]Defendant requested this third category of documents from Capt. Mike McCollum, an officer not present at the stop, and Sgt. J.C. Elliot, the officer who conducted the initial stop. Defendant also requested a tape of all of Sgt. Elliot's stops for the day in question.

[7]Although Sgt. Simpson has been K9 certified independently, he has also trained with K9 Kas. Since Sgt. Simpson testified that each K9 may be trained differently, this Court will only look to the training records of Sgt. Simpson as they relate to K9 Kas.

certification sufficient, and describing a review of records to determine accuracy rates as "unnecessary").[8] Here, the Government met its burden by offering testimony that K9 Kas had been certified at the time of the stop, and also that he was recently re-certified in September 2007. The Defendant had ample opportunity on cross-examination, which he utilized, to ask the witnesses about the training and certification of K9 Kas. Absent some grounds for doubting this evidence, the Defendant cannot compel the production of documents by simply denying the reliability of the dog or denying that the dog ever alerted in the first place. See United States v. O'Neal, 2001 U.S. Dist. Lexis 13722, 26-28 (D. Kan. 2001) (denying a motion to issue a 17(c) subpoena because the defendant failed to provide any support other than accusations).[9] The only substantive claim offered by the Defendant is that Sgt. Simpson stated to Defendant that his dog "does not false indicate." Def. Resp. 2. However, that Government does not rely upon the truth of that statement, and it is not relevant to the suppression issue since the Court found that reasonable suspicion existed to detain the Defendant beyond the issuance of the warning ticket. Finally, canine training records are only relevant to a court's determination of probable cause, and therefore any later disclosure would be

---

[8] See Fourth Circuit Federal Rules of Appellate Procedure and Local Rules, Local Rule 32.1.

[9] Defendant argues that the canine records are relevant for two reasons: a) to determine if the dog ever alerted, and b) to impeach Sgt. Simpson's statement that his dog "does not false indicate." Def. Resp. 1-2. The Court's review of the training records in camera reveals behavior that is entirely consistent with the testimony of Sgt. Simpson as to the means by which K9 Kas alerts, K9 Kas's certification and training, and documented false-positives that never rose to the level of putting that certification at risk. See Koon Chung Wu, 2007 U.S. App. Lexis at 18 (finding an accuracy rate of 60% as "more than reliable enough ... to have established probable cause").

unwarranted.

Further, evidence of K9 training in this instance is inadmissible because any probative value is substantially outweighed by the unnecessary waste of time. Fed. R. Ev. 403. This Court finds it unnecessary and unreasonable to engage in a mini-trial regarding the education of a narcotics-detection dog absent some basis for doing so. Although the Defendant has questioned the existence and the reliability of the indication given by K9 Kas, there is no evidence in the record to question the validity of an indication given by a certified police dog.[10] See United States v. Williams, 726 F.2d 661, 663-64 (10th Cir. 1984) (concluding dog alert was valid despite dog's somewhat anomalous behavior in detecting the presence of narcotics); Gonzalez-Acosta, 989 F.2d at 389 (quashing a subpoena for training records of a canine that had been de-certified and re-certified only three days prior to the stop in question). The Fourth Circuit has recognized that the record of a narcotics dog does not have to be perfect to justify a finding of probable cause by dog alert, and therefore the Defendant must offer more than mere denials to justify production of documents on this matter. See Koon Chung Woo, supra.

Regarding the request for any plan or policy regarding the interdiction of criminals on I-77, and for the video of all stops conducted by Sgt. Elliot that day[11], this Court will quash that part of the subpoenas as non-specific and irrelevant. Other courts

---

[10] The Court found the evidence of a proper indication by K9 Kas, the testimony of Sgt. Simpson, and the video of the stop, to be consistent with the training records it reviewed in camera.

[11] The Court believes that the purpose for requesting this video tape is to analyze the people stopped that day by the officers in the hopes of finding a particular pattern.

have found that 17(c) subpoena requests for "any and all" documents are too broad to meet the test outlined in Nixon.  See United States v. Louis, 2005 U.S. Dist. Lexis 1087, 16-17 (S.D.N.Y. 2001) (denying a 17(c) subpoenas for "any and all" documents as too broad).  Furthermore, this request is nothing more than a fishing expedition in the hopes of uncovering information regarding a de facto drug interdiction checkpoint.  Def. Resp. 2.  Such vaguely aimed searches for constitutional violations are precisely the type of subpoenas that Nixon prohibits.  Nixon, 418 U.S. at 700.  The evidence concerning the modus operandi of the officers who made the traffic stop in this instant case bears no indicia of an illegal drug interdiction checkpoint.

For the foregoing reasons, this Court will grant the Government's Motion to Quash the Subpoenas issued by the Defendant.


**IT IS HEREBY ORDERED** that the Government's Motion to Quash Subpoenas be **GRANTED**.


Signed: October 15, 2007

Richard L. Voorhees
United States District Judge